## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

SENTRELL LEVERT COPELAND, #1416753,

                     Petitioner,

v.                                          ACTION NO. 2:17cv93

HAROLD W. CLARKE,
Director, Virginia
Department of Corrections,

                     Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on Sentrell Levert Copeland's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and the respondent's motion to dismiss. This matter was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 15, be **GRANTED**.

### I.       STATEMENT OF THE CASE

Sentrell Levert Copeland ("Copeland"), an inmate currently confined at the River North Correctional Center of the Virginia Department of Corrections, asserts that his actual innocence of the underlying offense should excuse his procedural defaults, of failure to exhaust state court remedies and failure to timely file his petition, and permit the Court to address his underlying claims regarding the constitutionality of his guilty plea. ECF No. 1.

## A.  Copeland's Offense, Plea, and Sentencing

On July 18, 2011 in the Circuit Court for the City of Norfolk ("trial court"), Copeland entered a guilty plea to malicious wounding while part of a mob.  Plea Tr. at 2, *Commonwealth v. Copeland*, CR11000909-00 (Va. Cir. Jul. 18, 2011), ("Cir. Ct. R." at 205).[1]  He also pled guilty to violating the terms of his probation.  Cir. Ct. R. at 214.[2]

According to the joint stipulation of evidence provided to the trial court in support of Copeland's guilty plea, "[t]he parties agreed had the case gone to trial the Commonwealth's evidence would be" the following.

> On 5/8/2010 Darren Gray, Shanitra Kemp and their infant child arrived at City Park located in the 3500 block of Granby Street in order to celebrate their infant child's birthday with friends and family.  With them were Kemp's sister and her sister's children.  Gray unloaded party items including cups, plates, and food placing them under a picnic area. . . . Adjacent to the picnic area Gray and his family were using was a second picnic area . . . where a group had gathered which included, but was not limited to, Darius Jenkins, Michael Moore, Lamar Corey, Rashand Jones and Sentrell Copeland.  This group approached Gray while he held his infant child at which time Shanitra was directed to pack up and leave with the children.  As Gray's child was removed from his arms and handed to Shanitra, Gray was surrounded by the group which began beating him.  During the beating Gray fell to the ground where the group continued to hit and kick Gray about his whole body.  Additionally a glass bottle of Grey Goose vodka, which ha[d] been sitting on one of the two picnic tables, was used to strike Gray on the right side of his face causing glass to imbed in Gray's face and multiple lacerations. . . . Positively identified as part of the group viciously beating Gray was this defendant along with Darius Jenkins, Michael Moore, Rashand Jones and Lamar Corey.  All those involved in the beating, along with many other observers of the incident, then fled when police sirens were heard approaching.  Upon arrival by the police and paramedics Gray was pronounced dead as a result of multiple gunshot wounds caused by one or more suspects yet to be charged with Gray's murder. . . .

---

[1] "Cir. Ct. R." refers to Copeland's state records from the Circuit Court for the City of Norfolk, provided to this Court on a compact disc, with pages numbered 1–255 in the bottom right corner. *Commonwealth v. Copeland*, No. CR11000909-00 (Va. Cir.).

[2] Copeland was convicted in the trial court on September 2, 2009, of possession of cocaine in violation of Virginia Code § 18.2-250, and was sentenced to three years, all suspended.  Cir. Ct. R. 115.

> Numerous items of evidence were collected at the scene and submitted for analysis along with buccals from the defendants to the state forensic lab. A positive DNA match to Sentrell Copeland was developed from a swab taken from the cap of a water bottle collected as evidence at the scene. . . .

> Finally the defendant was read his Miranda Rights, waived his rights and denied participating in the beating however after being confronted with his DNA at the scene Copeland did admit[] to being present in the park during the beating of Gray.

ECF No. 16-6 at 1–2.

Following his arrest on October 20, 2010, Copeland admitted to police that he witnessed Gray's beating, and heard shots fired, but did not know the identity of the shooter. ECF No. 16-8 at 1–2. Copeland "speculated people were saying he was involved because he was a part of the group and he was a blood." *Id.* at 2. Copeland's DNA was recovered from the top of a water bottle police found at the crime scene. ECF No. 16-7. Although the medical examiner found that Gray died from multiple gunshot wounds, he found evidence of "multiple blunt force injuries which were primarily noted over the upper back. . . . [from] at least 11 separate impact sites [and] . . . a cluster of cuts at the right side of [Gray's] face with associated broken fragments of glass . . . consistent with an impact from glass." ECF No. 16-6 at 10. Copeland was indicted on March 16, 2011, for malicious wounding while part of a mob.[3] Cir. Ct. R. 6.

In conjunction with his guilty plea, on July 18, 2011, Copeland completed and signed, with defense counsel's assistance, a document entitled "Advice to Defendants Pleading Guilty." ECF No. 16-5. In this document, Copeland represented that he pled guilty to "mob assault," which was handwritten into the document. *Id.* at 1. He indicated by means of check marks, initials, and his signature that, among other things: (1) he fully understood the charge against

---

[3] The indictment charges that Copeland "feloniously did, as part of a mob, maliciously shoot stab, cut, wound or cause serious bodily injury to Darren Gray, with intent to maim, disable, disfigure or kill" in violation of Virginia Code § 18.2-41. Cir. Ct. R. 6.

him and discussed with defense counsel the elements the government would have to prove to convict him of the charge; (2) he had adequate time to discuss possible defenses to the charge with defense counsel; (3) following such discussion, he decided for himself to plead guilty; (4) he was entering the plea of guilty freely and voluntarily because he was "in fact guilty of the[] charge[];" (5) no one had threatened or forced him to plead guilty; and (6) he was satisfied with the services provided by defense counsel. *Id.*

During his plea colloquy, Copeland made the following statements after being sworn to tell the truth:

> Q.   Did you read, sign and understand this three-page form called, Advice to Defendants Pleading Guilty?
>
> A.   Yes, sir.
>
> Q.   If you had questions about anything in it, did Mr. Robinson answer them to your satisfaction?
>
> A.   Yes, sir.
>
> Q.   Are you pleading guilty to this charge because you are, in fact, guilty?
>
> A.   Yes, sir.
>
> Q.   Are you entirely satisfied with the services of Mr. Robinson?
>
> A.   Yes, sir.
>
> Q.   How many times have you met with him about these charges before today?
>
> A.   Plenty of times.
>
> Q.   There's a plea agreement that provides a Presentence Report will be prepared and the maximum sentence you will receive will be 10 years in prison. Is that your understanding of the plea agreement?
>
> A.   Yes, sir.
>
> Q.   Did you read, sign and understand it?

4

A.      Yes, sir.

Q.      Has either Mr. Robinson, Ms. Pandya, the prosecutor, or anyone else
        promised you anything that's not in it?

A.      No, sir.

Q.      I also have a document here called, Stipulation of the Commonwealth's
        Evidence.  Did you read, sign and understand this?

A.      Yes, sir.

Q.      Have you understood all the questions I have asked you?

A.      Yes, sir.

Q.      Do you have any questions you would like to ask me?

A.      No, sir.

THE COURT:
        Thank you, sir.  You may have a seat.
        I find his plea of guilty has been made freely, voluntarily and intelligently
        with an understanding of the charge and the consequences of the plea.

Cir. Ct. R. 206–07.

On October 3, 2011, the trial court entered final judgment and imposed a ten-year
sentence for malicious wounding while part of a mob with no time suspended, and three years of
post-release supervision.  *Id.* at 113–14.  The court ordered the sentence to run consecutively
with all other sentences.  *Id.*  The trial court further imposed a sentence of three years for the
probation violation.  *Id.* at 115–16.  Copeland did not appeal the conviction; however, he
subsequently filed several motions with the trial court.

## B.      Motions for Reconsideration

On October 31, 2011, Copeland sent his first motion for reconsideration of sentence to
the trial court.  *Id.* at 117–19.  Copeland stated that he pled guilty because his attorney told him
that his sentence would be within certain guidelines, with the high range being six years and four

5

months and with a cap of ten years. *Id.* at 117.[4]   Copeland wrote, "I don't feel my lawyer represented me the way he told me he would your honor.  I'm not saying it's his fault that I was sentence[d] to this amount of time but your honor I was promised that you would definitely and should stay within my guidelines. . . ." *Id.*  Copeland stated, in part,

> I am aware that I was charged with a crime which is my first violent crime and my first time being involved in a crisis like this with the law. . . . [M]y background facts prove I am not a trouble maker at all or a violent threat to the society but just young and curious who made a couple foolish decisions in my life. . . . I have ask[ed] god for forgiveness and . . . I am pleading and asking for sympathy that I can get a second chance to prove to myself and family that I can be successful in this society, you honor.  I have trul[]y changed for the better.

*Id.* at 117–18.  Copeland's handwritten motion is devoid of claims of actual innocence. *Id.* at 117–19.  On November 8, 2011, the trial court summarily denied this motion for reconsideration. *Id.* at 120–21.

On December 12, 2011, Copeland filed a second motion for reconsideration of sentence with the trial court. *Id.* at 125–28.  He made the same points he argued in his first motion, and added, in part,

> the facts of this case were extremely distorted and manipulated against me by my lawyer. . . . I feel I was [coerced] into a bad judg[]ment call by my lawyer and peers. . . . There are no excuses that can be made for my ignorance and careless behaviors, and I sincerely apologize for the disruptions I have caused in society and your courtroom, your honor.

*Id.* at 125.  This second motion does not contain a claim of actual innocence. *Id.* at 125–28.  It is unclear whether the trial court considered this motion because the record does not contain an order addressing this second motion for reconsideration.

---

[4] The sentencing guideline sheet indicates a recommended sentencing range of two years and seven months to six years and four months.  Cir. Ct. R. 107.

**C.      No Direct Appeal**

Copeland did not appeal the trial court's final order or the denial of his first motion for reconsideration.

**D.      Government's Witness Charged with Perjury**

On April 18, 2013, the Commonwealth's Attorney wrote Copeland's counsel that,

> [i]nformation has come to my attention that stems from evidence previously addressed in this case. As a result, I am advising that there has been a change in the Commonwealth's posture of the evidence. I am advising so that you can address the matter in the manner you deem most appropriate. I will be contacting you to discuss the matter further and set the matters as needed.

Cir. Ct. R. 129. The state court record does not contain any filings following this letter to clarify the change in the posture of the Commonwealth's evidence.

Copeland attached a June 22, 2013 newspaper article to his subsequently filed habeas petitions, which indicates that "the key witness" in the cases against Copeland and three other defendants accused of the mob beating was indicted on perjury charges[5] due to evidence showing he could not have been present at the time of the beating. ECF No. 1 at 16. Copeland states that he discovered this information in 2013 "through the assistance of an institutional attorney and an article in the Hampton Roads newspaper." ECF No. 16-3 at 5–6, 11.

On July 9, 2013, Copeland's counsel responded to a letter from Copeland, advising:

> unlike your co-defendants, you are currently in the custody of the Department of Corrections. Your post conviction is significantly complicated by that fact. I am consulting with other counsel in an effort to properly assist you. I will keep you advised with regard to my efforts. I look forward to working with you.

---

[5] According to the newspaper article, only one of four persons charged in the attack (Michael M. Moore) elected to go to trial and was convicted. ECF No. 1 at 16. Apparently, the witness testified at that trial.

*Id.* at 21.[6]  Copeland's state court records do not contain any filings with respect to the perjury charges.

On August 29, 2013, Copeland filed a motion to vacate in the trial court asserting he was denied effective assistance of counsel and due process, he was coerced into an involuntary guilty plea, and he was actually innocent of mob assault.  *Commonwealth v. Copeland*, No. CL13006618-00 (Va. Cir. Aug. 29, 2013), ("Cir. Ct. Mot. to Vacate R." at 1–3).[7]  The trial court denied the motion finding:  (1) there was no fraud upon the court because the government's witness did not testify at any trial involving Copeland; (2) Copeland expressly represented during his guilty plea that he was guilty of the offense, which was corroborated by his stipulation that his DNA was found at the scene of the crime; and (3) Copeland was bound by his voluntary guilty plea and "his statements to [the court] that he was actually guilty of the crime."  *Id.* at 85–86.  The Supreme Court of Virginia refused Copeland's petition for appeal on June 16, 2014.  *Id.* at 95.

Copeland represents in his habeas appeal filed in the Supreme Court of Virginia that the attorneys for his co-defendants filed motions to reconsider their convictions and sentences, and that the sentences imposed were reduced.  ECF No. 16-3 at 5.  He further represents that his

---

[6] Pursuant to Virginia Code § 19.2-303,

> If a person has been sentenced for a felony to the Department of Corrections but has not actually been transferred to a receiving unit of the Department, the court which heard the case, if it appears compatible with the public interest and there are circumstances in mitigation of the offense, may, at any time before the person is transferred to the Department, suspend or otherwise modify the unserved portion of such a sentence.

[7] "Cir. Ct. Mot. to Vacate R." refers to Copeland's state records related to his motion to vacate filed in the Circuit Court for the City of Norfolk, provided to this Court on a compact disc, with pages numbered 1–126.  *Commonwealth v. Copeland*, No. CL 13-6618 (Va. Cir.).

attorney "failed to submit such a motion . . . because [Copeland] was transferred to the Department of Corrections before [the] perjury was discovered." *Id.*

E.    **Copeland's State Collateral Review**

On June 20, 2016, Copeland filed a petition for writ of habeas corpus in the trial court claiming: (1) his plea of guilty was not knowingly, voluntarily, or intelligently made; and (2) his attorney did not provide effective assistance of counsel because he failed to properly investigate the charge and coerced Copeland to plead guilty. ECF No. 16-1 at 3–9. Copeland attached a copy of the June 22, 2013 newspaper article. *Id.* at 13.

On September 6, 2016, the trial court dismissed Copeland's petition for the following reasons:

1.    Copeland's petition was barred by the statute of limitations, Va. Code § 8.01-654(A)(2), because he filed it more than four years after his convictions,[8] and even if the time from sentencing to the revelation of the perjury was tolled, the petition was still untimely;

2.    Copeland was not entitled to tolling of the statute of limitations under § 8.01-229(D),[9] and the authority in *Hicks v. Director*, 768 S.E.2d 415 (Va. 2015), because Copeland failed to show that the Commonwealth's Attorney obstructed the filing of the habeas corpus petition, and no other exception to the statute of limitations applied;

3.    Because Copeland could have raised his first claim at trial or on appeal, it is barred by *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), as not cognizable; and

---

[8] Virginia Code § 8.01-654(A)(2) provides:

A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later.

[9] Virginia Code § 8.01-229(D) provides:

When the filing of an action is obstructed by a defendant's . . . using any [] direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought.

> 4.     Exceptions provided in federal habeas proceedings for cause, prejudice, and actual innocence do not apply to Virginia habeas proceedings, so the procedural defaults preclude consideration of the merits.

ECF No. 16-2 at 2–3.

On September 9, 2016, Copeland filed a notice of intent to appeal the September 6, 2016 dismissal order with the trial court. Cir. Ct. R. 198. Copeland did not, however, sign the petition for appeal that he filed in the Supreme Court of Virginia until January 31, 2017. ECF No. 16-3 at 19. In the belated appeal to the Supreme Court of Virginia, Copeland's claims attacked the actions of the trial court during the habeas appeal. ECF No. 16-3 at 2, 7. Copeland alleged the habeas court erred when it: (1) found that the petition was untimely and not excused under *Hicks v. Director*, 768 S.E.2d 415 (Va. 2015), or Virginia Code § 8.01-229(D); (2) found that the claim regarding the guilty plea was barred by *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974); (3) failed to address the claims of ineffective assistance of counsel, specifically as it related to cause to overcome the prior finding that his claim was barred; and (4) disposed of the issues without conducting an evidentiary hearing. *Id.* In support of his petition, Copeland argued that his counsel obstructed the filing of a timely habeas petition. *Id.* at 10–11. Copeland explained that, because his counsel indicated he was "consulting with other counsel" in an effort to assist him, Copeland "saw no reason to submit a complicated action to the circuit court, 'pro-se.'" *Id.* at 11.

On March 20, 2017, the Supreme Court of Virginia summarily dismissed Copeland's petition as untimely under 5:17(a)(1) of the Rules of the Supreme Court of Virginia.[10] ECF No. 16-4.

---

[10] Rule 5:17(a) of the Rules of the Supreme Court of Virginia provides:

> Unless otherwise provided by rule or statute, in every case in which the appellate jurisdiction of this Court is invoked, a petition for appeal must be filed with the clerk of this Court within the following time periods: (1) in the case of an appeal

### F.    Copeland's Federal Habeas Petition

On February 14, 2017, Copeland filed a petition for writ of habeas corpus in this Court, under 28 U.S.C. § 2254, alleging: (1) his plea of guilty was not knowingly, voluntarily, or intelligently made; (2) his attorney did not provide effective assistance of counsel because he failed to properly investigate the charges, and coerced Copeland into pleading guilty; and (3) the statute of limitations should not apply to bar his claims because he is actually innocent. ECF No. 1 at 3–13.

Copeland explains that his decision to plead guilty was an "involuntary act [] based upon counsel's alleged investigation of the facts of this case and his declaration that there existed no evidence to support my claim of innocence and that I would surely be convicted and sentenced to a much longer term of confinement then what he was able to secure if I simply pled guilty," and that "against the Commonwealth's witness, I simply stood no chance." *Id.* at 8–9. Copeland asserts his counsel was ineffective for failing to discover that the Commonwealth's witness was not present when the crime occurred. *Id.* at 9. Moreover, he argues that had he known the Commonwealth's witness was not present, "the key evidence, the only evidence that counsel informed me we could not combat, I would have instead chosen to go to trial like I always wanted to." *Id.* Copeland attached a letter from counsel memorializing a conversation with Copeland on April 20, 2011, three months prior to his guilty plea, when Copeland advised counsel that he wished to proceed to trial. *Id.* at 15.

Finally, Copeland argues that, because counsel was ineffective and coerced him to plead guilty, and because "newly-discovered evidence shows that I did not commit the crimes which I

---

direct from a trial court, not more than 90 days after entry of the order appealed from. . . .

plead guilty to, the actual innocence 'gateway' serves to overcome *what would be an untimely petition*." ECF No. 1 at 11–13 (emphasis added).

On September 5, 2017, respondent filed a motion to dismiss and Rule 5 answer pursuant to the Rules Governing Section 2254 Cases in the United States District Courts, along with a supporting memorandum.[11]   ECF Nos. 14–16. On November 17, 2017, after this Court granted him two extensions of time, Copeland filed a response in opposition to the motion to dismiss. ECF Nos. 19, 21, 22.

## II.    ANALYSIS

### A.    Copeland's federal petition was not timely filed under 28 U.S.C. § 2244(d)(1).

Copeland's petition is time-barred by the federal statute of limitations.  Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), section 2254 petitioners are subject to a one-year statute of limitations.  28 U.S.C. § 2244(d)(1).  The relevant sections of the statute provide that the one-year period begins to run from the *latest* of "the date on which the judgment became final by the conclusion of direct review," 28 U.S.C. § 2244(d)(1)(A), and "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D).  This time period tolls when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending.  28 U.S.C. § 2244(d)(2).

---

[11] The motion to dismiss and Rule 5 answer included a separately filed notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K).  ECF No. 17.  The notice informed Copeland how to respond to the motion in a timely way, and stated the consequences for failing to do so.

1.   **Copeland's petition is untimely under Section 2244(d)(1)(A), which commences the limitations period when the time for Copeland's direct appeal expired.**

Applying Section 2244(d)(1)(A), and commencing the federal statute of limitations when the time for seeking direct review expired, Copeland's federal habeas petition is untimely. The trial court entered final judgment against Copeland on October 3, 2011,[12] and Copeland had 30 days from October 3, 2011, to appeal his convictions. *See* Va. Sup. Ct. R. 5A:6 and 5:9.[13] Copeland's filing of the motions for reconsideration did not extend the time for filing an appeal. *See Sch. Bd. of City of Lynchburg v. Caudill Rowlett Scott, Inc.*, 379 S.E.2d 319, 323 (Va. 1989) ("Neither the filing of post-trial or post-judgment motions, nor the court's taking such motions under consideration, . . . is sufficient to toll or extend the running of . . . the 30-day period prescribed by Rule 5:9" for filing a notice of appeal.) (internal citations omitted); *see also Commonwealth v. Berry*, No. 1350-17-2, 2017 WL 6598484, at *3 (Va. App. Dec. 27, 2017) (citing *Sch. Bd. of City of Lynchburg* in a criminal case and holding that the court's consideration of the Commonwealth's motion to reconsider did not toll the 21-day period after which the trial court loses jurisdiction); *McHugh v. Commonwealth of Virginia*, No. 0184-96-4, 1997 WL 191275, at *1 (Va. App. Apr. 22, 1997) (same with respect to a motion to set aside the verdict).

---

[12] Respondent's brief uses the date October 15, 2011. ECF No. 16 at 4. The source of that date, however, is unclear. Final judgment was entered and signed by the trial court on October 3, 2011. Cir. Ct. R. at 114.

[13] Rule 5A:6, which provides the procedures for filing an appeal from the trial court to the Court of Appeals of Virginia, and Rule 5:9, which provides the procedure for filing an appeal from the trial court to the Supreme Court of Virginia, both state:

> No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree . . . counsel [] files with the clerk of the trial court a notice of appeal.

Because Copeland did not file an appeal, the judgment became final when his time expired for seeking review on November 2, 2011, and the statute of limitations on Copeland's federal habeas petition began to run. Copeland then had one year, or until November 2, 2012, to file his federal habeas petition. Copeland did not file his federal petition until February 14, 2017, well after the one-year federal limitations period had expired.

2.    **Copeland's petition is untimely under Section 2244(d)(1)(D), which commences the limitations period when Copeland could have discovered a government's witness was reportedly not present during the crime.**

A petitioner may be entitled to belated commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D), which provides that the one-year period may begin to run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." According to Copeland's petition, in April 2013, it was discovered that a Commonwealth's witness was not present at the time the crime occurred and had committed perjury during the trial of another defendant accused of the mob assault. ECF No. 1 at 9. The newspaper article, dated June 22, 2013, attached to Copeland's petition reports the witness's indictment for perjury. *Id.* at 16. Copeland states that he became aware of this information in 2013 "through the assistance of an institutional attorney and an article in the Hampton Roads newspaper." ECF No. 16-3 at 5–6, 11. Though Copeland does not indicate when he discovered the evidence, he corresponded with his counsel regarding the issue in July 2013. *See* ECF No. 16-3 at 21 (July 9, 2013 letter from counsel to Copeland). Applying this belated commencement of the federal statute of limitations under 28 U.S.C. § 2244(d)(1)(D) to Copeland's petition, his petition remains untimely. Copeland had one year from the discovery in 2013 to file his federal petition, but did not do so until February 2017.

14

3. **Statutory tolling under Section 2244(d)(2) does not apply to toll the federal statute of limitations.**

Copeland argues that the filing of his state petition should toll the federal statute of limitations, ECF No. 1 at 12, but he did not file his state petition with the trial court until June 2016, well after his federal limitations period had expired in July 2014. Even if the Court resolves all tolling issues in Copeland's favor, it is not possible to bridge the time period between Copeland's discovery of the perjury in 2013 and the filing of his federal petition in February 2017.

The record reveals that, although Copeland's counsel indicated that he would assist Copeland and then apparently failed to follow through with any filing, Copeland did not solely rely on this assistance. *See* ECF No. 16-3 at 21 (counsel's July 9, 2013 letter indicating that he would assist Copeland). Instead, Copeland signed a *pro se* motion to vacate on August 20, 2013, which he filed in the trial court. Cir. Ct. Mot. to Vacate R. 1–3. If the federal statute of limitations tolled when Copeland signed his motion to vacate, it began to run again on June 16, 2014, when the Supreme Court of Virginia refused the ensuing appeal. *Id.* at 95. Assuming Copeland discovered the perjury information by July 9, 2013, and the statute of limitations was tolled for 300 days from August 20, 2013 until June 16, 2014, Copeland's one-year federal limitations period expired on April 12, 2015. Copeland's state habeas petition, filed in June 2016, could not toll the already expired federal limitations period. Accordingly, Copeland's petition is untimely under 28 U.S.C. § 2244(d)(1), even if all tolling issues were resolved in Copeland's favor.

The Court can only address the merits of the untimely petition if Copeland can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards*, No. 2:10cv339, 2010 WL

5825427, at *3. Copeland argues that the statute of limitations should not bar review of the merits of his claims, because he is actually innocent of the mob assault. ECF No. 1 at 11–13. The Court will address Copeland's actual innocence claim in section II.C.

**B.     Copeland failed to properly exhaust his claims with the Supreme Court of Virginia.**

Before addressing the merits of the habeas petition, the Court must confirm that Copeland exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). The exhaustion doctrine ensures that state courts have a meaningful opportunity to consider allegations of constitutional violations before presentation of such claims to a federal court. *Rose v. Lundy*, 455 U.S. 509, 515 (1982). The exhaustion requirement is satisfied when the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court." *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991). Exhaustion may be achieved either through direct appeal or in post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). Under this doctrine, "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A state procedural rule is adequate if it is "regularly or consistently applied by the state courts." *McNeill v. Polk*, 476 F.3d 206, 211 (4th Cir. 2007) (citing *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988)). A state procedural

rule is independent "if it does not depend on a federal constitutional ruling." *Id.* (citing *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985)). "A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1).

A petitioner may overcome procedural default and obtain federal merits review, however, if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards v. Johnson*, No. 2:10cv339, 2010 WL 5825427, at *3 (E.D. Va. Dec. 15, 2010) (citing *Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996)).

Copeland has failed to exhaust his state remedies, because he failed to properly raise the claims before the Supreme Court of Virginia. Copeland did not file a direct appeal of his conviction and sentence. The two claims raised in Copeland's 2016 petition for writ of habeas corpus before the trial court were denied as barred by the state statute of limitations, and one of the claims was additionally barred by *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974), due to Copeland's failure to raise the claim at the time of his guilty plea or on direct appeal. ECF No. 16-2. The trial court specifically noted that the exceptions provided in federal habeas proceedings for cause, prejudice, and actual innocence did not apply to state habeas proceedings, and that Copeland's procedural defaults precluded the trial court's consideration of the merits. *Id.* at 2–3.

The Supreme Court of Virginia dismissed Copeland's appeal of the trial court's denial of his petition as untimely under Virginia Supreme Court Rule 5:17(a)(1). ECF No. 16-4. Rule 5:17(a) constitutes an adequate and independent state law ground for dismissal. *O'Dell v.*

17

*Netherland,* 95 F.3d 1214, 1244 (4th Cir. 1996). Accordingly, the Court can only address the merits of Copeland's petition if he can "demonstrate cause and prejudice for the default or demonstrate that failure to review the claims will result in a fundamental miscarriage of justice." *Edwards,* No. 2:10cv339, 2010 WL 5825427, at *3. Copeland has argued the fundamental miscarriage of justice exception applies to his petition, because he is actually innocent of the mob assault. ECF No. 1 at 11–13. His argument is addressed below.

## C.   Copeland has failed to show actual innocence sufficient to open the gateway permitting the Court to address his otherwise procedurally barred claims.

To have the merits of his constitutional claims reviewed by this Court, Copeland seeks an equitable exception allowing the Court to address his unexhausted and untimely filed petition based on a showing of actual innocence. *Id.* The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring procedurally defaulted claims and claims raised after the statute of limitations expired. *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013); *Schlup v. Delo,* 513 U.S. 298, 316 (1995). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins,* 506 U.S. 390, 404 (1993). It "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." *Schlup,* 513 U.S. at 324.

While a petitioner may establish an actual innocence gateway even if he entered a guilty plea, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Bousley v. United States,* 523 U.S. 614, 621 (1998). A petitioner convicted following a plea of guilty may attack his conviction in a habeas

18

proceeding "if he can establish that the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" *Id.* at 623 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal quotation marks omitted) (quoting *Schlup*, 513 U.S. at 327–28); *see also United States v. Fugit*, 703 F.3d 248 (4th Cir. 2012) (addressing petitioner's actual innocence claim as a gateway through which petitioner could attack his guilty plea on a procedurally defaulted section 2255 claim). More specifically, the exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at [the plea hearing]." *Schlup*, 513 U.S. at 324. If the petitioner provides the court with reliable, newly discovered evidence of his actual innocence, then the court weighs the new evidence in light of the previous admissible and inadmissible evidence and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

The *Schlup* standard is an exceedingly high burden to satisfy and thus only permits review in "extraordinary" cases. *House v. Bell,* 547 U.S. 518, 538 (2006); *see also Schlup*, 513 U.S. at 327–29. Further, a petitioner's actual innocence claim "'does not by itself provide a basis for relief.'" *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012) (quoting *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010)). Instead, a petitioner's "claim of innocence is . . . 'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "The gateway should open only when a petition presents 'evidence of innocence so

19